1
2
3
4
5
6

## UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8

9  **CLAY JOSEPH JONES,**

10              **Plaintiff**

11      **v.**

12  **BRANDON PRICE, Executive Director of
   Coalinga State Hospital in his individual**
13  **capacity; PAM AHLIN, Executive Director
   in her individual capacity; ALDO**
14  **MENDEZ; KEVIN ADAMS; CHANG
   LEE M.D.; DOES 1-10,**
15
           **Defendants**
16

17

**CASE NO. 1:21-CV-01212-AWI-SAB**

**ORDER ON DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT**

(Doc. No. 16)

18

19      Plaintiff Clay Joseph Jones initiated this civil rights lawsuit pursuant to 42 U.S.C. § 1983

20  by filing a Complaint against Defendants Brandon Price, Pam Ahlin, Aldo Mendez, Kevin Adams,

21  and Chang Lee.  Doc. No. 1.  Defendants filed a motion to dismiss the Complaint, which the Court

22  granted with leave to amend.  Doc. Nos. 5, 13.  Plaintiff filed the operative First Amended

23  Complaint ("FAC") asserting a single cause of action for violation of rights protected by the

24  Fourteenth Amendment.  Doc. No. 14.  Pending before the Court is Defendants' motion to dismiss

25  the FAC.  Doc. No. 16.  For the following reasons, the Court will grant Defendants' motion with

26  leave to amend.

27
28

### BACKGROUND[1]

On or about August 2, 2004, Plaintiff was detained at a secure facility pursuant to California's Sexually Violent Predator Act ("SVPA"), Cal. Welf. & Inst. Code § 6600 et seq.  At his probable cause hearing on July 24, 2006, probable cause was found to detain Plaintiff until adjudication could be had as to his status as a Sexually Violent Predator ("SVP").  In August 2006, Plaintiff was transferred from Sacramento County Jail to Coalinga State Hospital ("CSH"), a facility owned and operated by California's Department of State Hospitals ("DSH").  Plaintiff was brought to trial in 2017, and on June 6, 2018, the jury found that Plaintiff was a SVP.

Plaintiff filed a Petition for Writ of Habeas Corpus, which the Sacramento County Superior Court granted on September 4, 2018.  The Superior Court found that Plaintiff's approximately 14-year detention violated his rights under the Sixth and Fourteenth Amendments and vacated Plaintiff's detention and status as a SVP.  The Third District Court of Appeal affirmed but found that instead of a 14-year delay, Plaintiff suffered a 10-year delay for his trial.  On August 8, 2019, the Superior Court issued an Order for Immediate Release, and on August 12, 2019, Plaintiff was released from custody.

During his detainment at CSH, Plaintiff filed several claims under the California Government Claims Program ("GCP").  On or about February 16, 2012, Plaintiff submitted Government Claim #602571 against Ahlin, Mendez, and Adams for denial of civil and constitutional rights, retaliation, infliction of emotional distress, and confiscation of property, including a leather strap, vibrato bar, and guitar tools.  Doc. No. 18 at 41-59.  The Claim referred to the "Date of Incident" as "10-31-2011 through the present and still on-going to-date."  Id. at 43.

---

[1] This section summarizes allegations set forth in the FAC.  See Doc. No. 14.  Additionally, the Court takes judicial notice of the exhibits submitted with Defendants' motion and will reference them in this section.  See Doc. No. 19. Defendants specifically seek judicial notice of four documents: (1) the original Complaint (Doc. No. 19, Ex. A); (2) the FAC (Doc. No. 19, Ex. B); (3) the Declaration of Natalie Gedjeyan, Government Claims Specialist, dated October 21, 2021, including the contents thereof (Doc. No. 19, Ex. C); and (4) the Complaint filed in *Clay Joseph Jones v. Cliff Allenby, et al.*, Case No. 2:14-CV-2849, U.S. District Court of the Eastern District of California, on December 5, 2014 (Doc. No. 19, Ex. D).  Plaintiff does not object to the Court taking judicial notice of these four exhibits, and the original complaint and FAC can be referenced without judicial notice.  Upon review and in light of Plaintiff's non-opposition, the Court finds that the third and fourth exhibits consist of information that is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2); see *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004); Rogers v. Macias, 2019 U.S. Dist. LEXIS 171206, *2 n.2 (C.D. Cal. Apr. 25, 2019).  Accordingly, the Court will take judicial notice of these exhibits.

On or about October 10, 2017, Plaintiff submitted Government Claim #17010147 against Price and Ahlin for denial of civil and constitutional rights, retaliation, infliction of emotional distress, conspiracy, and confiscation of property.  Id. at 60-68.  Specifically, the Claim alleged that they improperly enforced a new rule that prohibited Plaintiff from enrolling in an "Open Music Studio" program unless he first enrolled in an active "Treatment Class."  Id. at 65.  The Claim referred to the "Date of Incident" as "On or about May 26, 2017 and still ongoing to date."  Id. at 60.

On or about August 17, 2018, Plaintiff submitted Government Claim #18007593 against Price and Ahlin for denial of civil and constitutional rights, retaliation, infliction of emotional distress, conspiracy, and confiscation of property.  Id. at 71-102.  This Claim specifically alleged that after he was temporarily transferred to Sacramento County Jail for a court appearance, the respondents placed him in unsafe housing with known enemies upon his return and refused to return all his property from storage in his prior unit.  Id. at 76-78.  The Claim referred to the "Date of Incident" as "July 2, 2018 and still ongoing to-date."  Id. at 71.

On or about January 30, 2020, after he had already been released from custody pursuant to the Superior Court's Order for Immediate Release, Plaintiff submitted Government Claim #20001587 against Price for denial of civil and constitutional rights, retaliation, infliction of emotional distress, and confiscation of property.  Id. at 105-21.  This Claim specifically alleged that after Plaintiff was released, Price refused to return to Plaintiff all the property he had accumulated during his detainment at CSH.  Id. at 107.  The Claim referred to the "Date of Incident" as "August 12, 2019 and months prior to on a continuing basis."  Id. at 105.

On June 21, 2022, Plaintiff filed the operative FAC alleging that he incurred the following injuries during his detainment at CSH: confiscation and destruction of personal and legal property; harassment and denial of privileges for refusing to submit to the SVP treatment program; housing in units detrimental to his health and safety; harassment and punishment for filing complaints about his conditions of confinement; involuntary subjection to psychotropic medication, assault, and battery; and denial of medical treatment, food, and water.  See Doc. No. 14.  On July 12, 2022, Defendants filed the instant Motion to Dismiss Plaintiff's FAC.  Doc. No. 16.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Godecke ex rel. United States v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). To survive a Rule 12(b)(6) motion for failure to allege sufficient facts, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Compliance with this rule ensures that the defendant has "fair notice" of the claims against it. Williams v. Yamaha Motor Co., 851 F.3d 1015, 1025 (9th Cir. 2017) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Under this standard, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc., 998 F.3d 397, 403 (9th Cir. 2021) (quoting Twombly, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. at 403 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Benavidez v. Cty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021). But the Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoted source omitted). Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Benavidez, 993 F.3d at 1145 (citing Iqbal, 556 U.S. at 678). Rather, "[f]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Hernandez v. City of San Jose, 897 F.3d 1125, 1132 (9th Cir. 2018) (citing Iqbal, 556 U.S. at 678).

**DISCUSSION**

**I.   Defendants' Motion to Dismiss**

Defendants move to dismiss the FAC on the grounds that (1) it fails to plead actionable conduct by Defendants, (2) the statute of limitations bars the FAC's claims, and (3) Defendants are entitled to qualified immunity.  The Court will address each of these grounds, as well as other pleading deficiencies, below.  Cf. Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir. 1981) (courts may raise issues sua sponte during the course of a Rule 12(b)(6) motion); see also Reed v. Lieurance, 863 F.3d 1196, 1207 (9th Cir. 2017).

**A.  Sufficiency of Pleadings as to Claims**

The FAC asserts claims for retaliation, deprivation of property without due process, unsafe housing, involuntary subjection to psychotropic medication, deprivation of food and water, and denial of medical treatment.  The Court will review whether the pleading standards are met for each claim.

1.  Retaliation

Prisoners and pretrial detainees have a constitutional right to file grievances against prison officials and to be free from retaliation for doing so.  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)); Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011).  Within the prison pretrial context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Rood v. Lockwood, 2020 U.S. Dist. LEXIS 196801, *3 (E.D. Cal. Oct. 22, 2020); Chatman v. Vera, 2018 U.S. Dist. LEXIS 186683, *5 (E.D. Cal. Oct. 30, 2018).

Here, the FAC makes vague and conclusory allegations that Defendants "retaliate[ed] in a punitive fashion against Plaintiff" for "refus[ing] to submit to a SVP treatment program" and for "refusing to be a compliant prisoner."  Doc. No. 14 at 7-9.  The FAC does not once mention the First Amendment, nor sufficiently describe what "protected conduct" by Plaintiff caused each

1  Defendant to take particular adverse actions against him.  Neither does the FAC allege facts that

2  his First Amendment rights were chilled nor explain why the acts by Defendants failed to advance

3  legitimate correctional goals.  See Hydrick v. Hunter, 500 F.3d 978, 983-84 (9th Cir. 2007), rev'd

4  on other grounds, 129 S. Ct. 2431 (2009), op. after remand, Hydrick v. Hunter, 669 F.3d 937 (9th

5  Cir. 2012) (stating that civilly committed SVPs undergo a five-phase treatment program and that

6  conditional release is granted if phase five is completed); see also Griffin v. Price, 2022 U.S. Dist.

7  LEXIS 30196, *4 (E.D. Cal. Feb. 18, 2022) (stating that an SVP who is repeatedly found to be a

8  danger to the health or safety of the community may be committed indefinitely, or until the SVP

9  completes all five phases of treatment); Taylor v. Price, 2021 U.S. Dist. LEXIS 162800, *3 (N.D.

10  Cal. Aug. 26, 2021) (same); Walker v. Ahern, 2018 U.S. Dist. LEXIS 83616, *11 (N.D. Cal. May

11  17, 2018) (same).  Because the FAC fails to allege the elements of a First Amendment retaliation

12  claim, no plausible claim is stated.  Rhodes, 408 F.3d at 567-68.

13       2.  Deprivation of Property Without Due Process

14       Civil detainees have a protected interest in personal property.  Hansen v. May, 502 F.2d

15  728, 730 (9th Cir. 1974); Williams v. Price, 2018 U.S. Dist. LEXIS 121102, *16 (E.D. Cal. July

16  19, 2018) ("SVPs have a protected interest in their personal property.").  In this context, the Due

17  Process Clause of the Fourteenth Amendment protects plaintiffs from being deprived of their

18  property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Serrano v.

19  Francis, 345 F.3d 1071, 1079 (9th Cir. 2003).  While neither negligent nor unauthorized

20  intentional deprivations of property give rise to a violation of the Due Process Clause if the state

21  provides an adequate post-deprivation remedy, an authorized, intentional deprivation of property

22  is actionable under the Due Process Clause.  Hudson v. Palmer, 468 U.S. 517, 533 n. 14 (1983);

23  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994).  An "authorized deprivation" is one carried

24  out pursuant to established state procedures, regulations, or statutes.  See Piatt v. MacDougall, 773

25  F.2d 1032, 1036 (9th Cir. 1985) (en banc); Knudson v. City of Ellensburg, 832 F.2d 1142, 1149

26  (9th Cir. 1987).

27       The Due Process Clause of the Fourteenth Amendment guarantees both procedural and

28  substantive due process. The procedural due process component protects individuals against the

1   deprivation of liberty or property by the government, while substantive due process protects

2   individuals from the arbitrary deprivation of liberty by the government.  Portman v. County of

3   Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993); see also Brittain v. Hansen, 451 F.3d 982, 991 (9th

4   Cir. 2006).  A § 1983 claim based upon procedural due process has three elements: "(1) a liberty

5   or property interest protected by the Constitution; (2) a deprivation of the interest by the

6   government, and (3) lack of process."  Fikre v. FBI, 35 F.4th 762, 776 (9th Cir. 2022)

7   (citing Portman, 995 F.2d at 904).  "The Due Process Clause does not create substantive rights in

8   property; the property rights are defined by reference to state law."  Portman, 995 F.2d at 904; see

9   also Nev. Dep't of Corr. v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) ("Property interests are

10  created by state law."); Gregory v. Fresno Cty., 2019 U.S. Dist. LEXIS 97183, *73-74 (E.D. Cal.

11  June 7, 2019).

12        Here, the FAC appears to allege that Plaintiff suffered an authorized, intentional

13  deprivation of property, given its allegations that Price "approved" and "ratified" the confiscations

14  of Plaintiff's property pursuant to CSH policy.[2]  However, the FAC does not allege any non-

15  conclusory facts indicating that he was denied adequate due process.  The FAC states that

16  "Defendants deprived the Plaintiff of life and liberty without due process that is guaranteed under

17  the 14th Amendment" but does not describe what "process" was sought or denied.  Doc. No. 14 at

18  12, ¶ 29.  Additionally, the FAC does not explain why the grievance procedures afforded to

19  Plaintiff to contest the confiscation of his personal property failed to afford him due process.  The

20  FAC also does not describe any state law or regulation that authorized or entitled him to possess

21  the personal property in question during his detainment at CSH.  Williams, 2018 U.S. Dist. LEXIS

22  121102, at *19-20.  Accordingly, the Court finds that the FAC's claim for deprivation of property

23  without due process under the Fourteenth Amendment is insufficiently alleged and will be

24  dismissed.

25  //

26  _____

27  [2] To the extent the FAC is alleging that a Defendant negligently or without authority deprived Plaintiff of his personal property, that claim fails because "California Law provides an adequate post-deprivation remedy for any property deprivations."  Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895).  See also Brummett v. Lopez, 2021

28  U.S. Dist. LEXIS 250327, *18-19 (E.D. Cal. July 20, 2021).  Plaintiff does not argue that the state did not provide him with an adequate state post-deprivation remedy.

1          3.  <u>Failure to Protect</u>

2          Pretrial detainees have "a due process right to be free from violence from other inmates."

3  <u>Castro v. Cty. of L.A.</u>, 833 F.3d 1060, 1067 (9th Cir. 2016).  This is because "corrections officers

4  have 'stripped [the detainees] of virtually every means of self-protection and foreclosed their

5  access to outside aid.'"  <u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994)).  The elements

6  of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual

7  officer are: "(1) The defendant made an intentional decision with respect to the conditions under

8  which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of

9  suffering serious harm; (3) The defendant did not take reasonable available measures to abate that

10  risk, even though a reasonable officer in the circumstances would have appreciated the high

11  degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By

12  not taking such measures, the defendant caused the plaintiff's injuries."  <u>Id.</u> at 1071.  With respect

13  to the third element, the defendant's conduct "must be objectively unreasonable, a test that will

14  necessarily turn on the facts and circumstances of each particular case."  <u>Id.</u>

15          Here, the FAC does not sufficiently allege that the conditions of Plaintiff's detainment put

16  him at substantial risk of suffering serious harm from other inmates, nor allege facts and

17  circumstances indicating that Defendants' actions were unreasonable.  The FAC merely alleges

18  that Plaintiff was placed "in housing with known enemies" that was "detrimental due to Plaintiff's

19  known medical and psychological conditions."  Doc. No. 14 at 13-14, ¶ 33.  The FAC does not

20  explain why Plaintiff's placement with certain inmates put him at substantial risk of suffering

21  serious harm, nor allege that he actually suffered a cognizable harm while placed in this housing.

22  <u>Cf.</u> <u>Eaves v. Alameda Cty. Sheriff Dep't</u>, 2021 U.S. Dist. LEXIS 11583, *2 (N.D. Cal. Jan. 21,

23  2021) (dismissing failure-to-protect claim because "plaintiff has not alleged that he has suffered

24  any cognizable injury").  Because the record does not indicate that Defendants failed to protect

25  Plaintiff from risks of serious harm or that Plaintiff suffered a cognizable injury due to this failure

26  to protect, the FAC does not sufficiently plead a failure-to-protect claim for unsafe housing.

27          4.  <u>Involuntary Psychotropic Medication</u>

28          A defendant has a "significant liberty interest in avoiding the unwanted administration of

1  antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."  Washington v.

2  Harper, 494 U.S. 210, 221-22 (1990); United States v. Gillenwater, 749 F.3d 1094, 1100 (9th Cir.

3  2014).  The forcible injection of medication into a nonconsenting person's body represents a

4  substantial interference with that person's liberty.  Gillenwater, 749 F.3d at 1100 (citing Harper,

5  494 U.S. at 229).  However, the Due Process Clause permits the State to treat a prison inmate, who

6  has a serious mental illness, with involuntary antipsychotic drugs if the inmate is dangerous to

7  himself or others and the treatment is in the inmate's medical interest.  Harper, 494 U.S. at 227;

8  United States v. Williams, 356 F.3d 1045, 1055 (9th Cir. 2004).  The Ninth Circuit has extended

9  the *Harper* standard to apply to pretrial detainees.  United States v. Loughner, 672 F.3d 731, 752

10 (9th Cir. 2012).  In the context of involuntary medication, courts find three factors particularly

11 relevant in determining the reasonableness of the prison's policy: (1) whether there is "a valid,

12 rational connection between the prison regulation and the legitimate governmental interest put

13 forward to justify it;" (2) the impact that the accommodation of the asserted constitutional right

14 will have on guards and other inmates, and on the allocation of prison resources generally; and (3)

15 "the absence of ready alternatives."  Id. at 745 (quoting Harper, 494 U.S. at 224-25).

16      Here, Plaintiff was a civil detainee held pursuant to the SVPA.  The circumstances of his

17 commitment imply that he had no expectation that he would be free from unwanted psychotropic

18 medication.  See Cal. Welf. & Inst. Code §§ 6600 et seq. (defining a SVP as someone with a

19 diagnosed mental disorder that makes him a danger to others, requiring the state to treat said

20 mental disorder in a designated secure facility, and authorizing the forcible medication of an

21 unwilling SVP under certain circumstances); see also Townsend v. Hemela, 2020 U.S. Dist.

22 LEXIS 12202, *6 (E.D. Cal. Jan. 24, 2020); Greene v. Olvera, 2017 U.S. Dist. LEXIS 1736, *17

23 (E.D. Cal. Jan. 5, 2017).  "Under the framework set forth in *Harper*, due process permits a state

24 hospital to forcibly medicate an individual who has been shown to pose a threat to those around

25 him."  See, e.g., Townsend, 2020 U.S. Dist. LEXIS 12202, at *6-7 (collecting cases); see also

26 State Dep't of State Hosps. v. J.W., 31 Cal. App. 5th 334, 338 (2018) (finding statutory authority

27 to treat pretrial detainees held under the SVPA with involuntary medication).  The FAC does not

28 state what psychotropic medication Plaintiff was prescribed, why or how the medication was

9

administered, or why his situation warranted an expectation to be free from such treatment unlike other detainees held pursuant to the SVPA.  Greene, 2017 U.S. Dist. LEXIS 1736, at *17.  The FAC merely sets forth conclusory allegations that Defendants instigated and presented "false grounds so that Plaintiff would be the subject of involuntary psychotropic medication."  Doc. No. 14 at 8, ¶ 17.  This does not allege sufficient factual matter to state a claim to relief that is plausible on its face.

     5.  Deprivation of Food and Water

     The Eighth Amendment to the Constitution imposes duties on officials to ensure that inmates receive adequate food and water.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner."  Castro, 833 F.3d at 1067 (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)).  To state a claim based on food or water deprivation, the plaintiff must allege facts showing that the deprivation was sufficiently serious.  Farmer, 511 U.S. at 834.  The Eighth Amendment "requires only that prisoners receive food [and water] that is adequate to maintain health."  Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1259 (9th Cir. 2016) (citing Foster v. Runnels, 554 F.3d 807, 813 n.2 (9th Cir. 2009)).  "[R]epeated and unjustified failure" to provide inmates adequate sustenance "amounts to a serious deprivation" in violation of the Eighth Amendment.  Id.

     Here, the allegations and evidence before the Court do not indicate that Plaintiff was denied food and water in a manner that violated the Constitution.  The FAC does not allege that the food or water Plaintiff received was unsanitary, moldy, inedible, or otherwise inadequate.  See Mendiola-Martinez, 836 F.3d at 1260.  Even if the food or water was somehow deficient, Plaintiff has not provided any evidence of a deprivation that amounted to a "repeated and unjustified failure" to provide sustenance "adequate to maintain health."  Id. at 1259-60.  Rather, the FAC merely states in conclusory language that Plaintiff suffered harm due to "[d]enial of food and water."  Doc. No. 14 at 8, ¶ 17.  Because the record does not allege facts that Plaintiff was denied food and water in a manner that violated the Constitution, the FAC fails to state a plausible food and water deprivation claim.

1    6.  Denial of Medical Treatment

2    The Eighth Amendment to the Constitution imposes duties on officials to ensure that

3  inmates receive adequate medical care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The due

4  process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections

5  available to a convicted prisoner."  Castro, 833 F.3d at 1067 (citing City of Revere v. Mass. Gen.

6  Hosp., 463 U.S. 239, 244 (1983)).  The Supreme Court has treated medical care claims

7  substantially the same as other conditions of confinement violations including failure-to-protect

8  claims. Gordon v. Cty. of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018).  Therefore, "the elements

9  of a pretrial detainee's medical care claim against an individual defendant under the due process

10  clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with

11  respect to the conditions under which the plaintiff was confined; (ii) those conditions put the

12  plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable

13  available measures to abate that risk, even though a reasonable official in the circumstances would

14  have appreciated the high degree of risk involved—making the consequences of the defendant's

15  conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's

16  injuries." Id. at 1125 (citing Castro, 833 F.3d at 1071).  With respect to the third element, the

17  defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts

18  and circumstances of each particular case.  Id.

19    Here, as with its failure-to-protect claim, the FAC does not sufficiently allege that the

20  conditions of Plaintiff's detainment put him at substantial risk of suffering serious harm, nor allege

21  facts and circumstances indicating that Defendants' actions were unreasonable.  The FAC merely

22  alleges that Plaintiff suffered "[d]enial of medical treatment after injuries were sustained in the

23  course of staff administering involuntary psychotropic medication."  Doc. No. 14 at 8, ¶ 17.  The

24  FAC does not provide any details about the nature or timing of the alleged injuries he suffered

25  from the psychotropic medication, nor allege that he requested but was denied medical treatment

26  in a manner amounting to a constitutional violation.  See Wood v. Housewright, 900 F.2d 1332,

27  1335 (9th Cir. 1990) (holding that denial of medical treatment for several days did not amount to a

28  constitutional violation); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994).  Because

1  the FAC does not allege sufficient factual matter to state a medical care claim that is plausible on

2  its face, this claim will be dismissed.

3  **B.  Sufficiency of Pleadings as to Defendants**

4  Defendants argue that the FAC fails to plead actionable personal conduct by Ahlin or

5  Price.  Although the parties do not dispute whether the FAC sufficiently alleges actionable

6  conduct on the part of Mendez, Adams, and Lee, the Court will review whether the pleading

7  standards are met for each Defendant.  See Wong, 642 F.2d at 361-62.

8  1.  Lumping Allegations Against Defendants

9  Generally, a plaintiff who sues multiple defendants must allege the basis of his claim

10  against each defendant to satisfy Federal Rule of Civil Procedure 8.  Culinary Studios, Inc. v.

11  Newsom, 517 F. Supp. 3d 1042, 1074 (E.D. Cal. 2021) (citing Flores v. EMC Mortg. Co., 997

12  F.Supp.2d 1088, 1103 (E.D. Cal. 2014)); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D.

13  Cal. 1988).  That is, a pleading should "allege what role each Defendant played in the alleged

14  harm[.]"  Culinary Studios, 517 F. Supp. 3d at 1074 (citing Inman v. Anderson, 294 F.Supp.3d

15  907, 919 (N.D. Cal. 2018)).  "Broad allegations against numerous defendants are not specific

16  enough to provide the defendants with notice of the plaintiffs' allegations."  Id.  Generally,

17  "[s]pecific identification of the parties to the activities alleged by the plaintiffs is required . . . to

18  enable [a] defendant to plead intelligently."  Id. (citing Flores, 997 F.Supp.2d at 1103); Gen-

19  Probe, Inc. v. Amoco Corp., 926 F. Supp. 948, 961 (S.D. Cal. 1996).  Therefore, complaints that

20  lump defendants together without adequately distinguishing claims and alleged wrongs among the

21  defendants are improper.  Culinary Studios, 517 F. Supp. 3d at 1074-75; see also Inman, 294

22  F.Supp.3d at 919; Flores, 997 F.Supp.2d at 1103; Gen-Probe, 926 F. Supp. at 961; Gauvin, 682 F.

23  Supp. at 1071.

24  Here, there are multiple Defendants in this case including Price, Ahlin, Mendez, Adams,

25  and Lee.  Throughout the FAC, Plaintiff makes allegations against all Defendants without

26  specifically distinguishing the improper and injurious conduct of Mendez, Adams, and Lee.  For

27  example, the FAC alleges that Mendez and Adams were psychiatric technicians at CSH who were

28  charged with being on the treatment team of Plaintiff.  Doc. No. 14 at 3-4, ¶ 8.  Mendez and

1  Adams allegedly had authority to devise Plaintiff's treatment plan.  Id.  The FAC further alleges

2  without explicitly naming Mendez or Adams that "Defendants and each of them" periodically

3  confiscated Plaintiff's musical equipment; harassed and denied Plaintiff privileges for refusing to

4  submit to the SVP treatment program; housed Plaintiff in units detrimental to his health and

5  safety; punished Plaintiff for filing complaints about his conditions of confinement; subjected

6  Plaintiff to involuntary psychotropic medication, assault, and battery; and denied Plaintiff medical

7  treatment, food, and water.  Id. at 7-8, ¶ 17.  According to the FAC, "[s]aid actions occurred

8  throughout the period of time that Plaintiff was incarcerated in Coalinga State Hospital."  Id. at 9,

9  ¶ 18.  The FAC does not explicitly describe a time or instance when Mendez or Adams performed

10  any of these actions during his 14-year detention other than a single generalized reference to a

11  confiscated "typewriter" and "legal files."  Id. at 13, ¶ 31.  The Court finds that the FAC does not

12  provide Mendez and Adams with "fair notice" of the allegations to satisfy Plaintiff's pleading

13  requirements.[3]  Williams, 851 F.3d at 1025; Culinary Studios, 517 F. Supp. 3d at 1074-75.  Based

14  on the pleadings, the Court is unable to draw a reasonable inference that Mendez and Adams are

15  liable for the alleged misconduct.  Irving Firemen's Relief & Ret. Fund, 998 F.3d at 403.

16          Furthermore, with respect to Lee, the FAC states that he was a medical doctor who

17  provided medical services at CSH.  Doc. No. 14 at 4, ¶ 9.  Lee allegedly administered

18  psychotropic medication to Plaintiff with force and without diagnostic or empirical support for

19  that medication.  Id. at 14, ¶ 35.  As a result of this medication, Plaintiff allegedly suffered serious

20  injuries and was denied food, water, and medical treatment for his injuries.  Id. at 14, ¶ 36.  The

21  FAC further alleges without explicitly naming Lee that "Defendants and each of them" performed

22  the same list of violative acts as described for Mendez and Adams above.  See id. at 7-8, ¶ 17.

23  The FAC does not explicitly describe a time or instance when Lee performed any of these actions

24  during Plaintiff's 14-year detention.  The Court finds that while the FAC's claims involving

25  medication, food, and water are specific as to Lee, the FAC as discussed above does not

26  sufficiently allege the elements for these claims and, therefore, these claims against Lee are not

27  _____

28  [3] Even if the single instance of confiscating a typewriter is specifically attributed to Mendez and Adams, the FAC as stated in the previous section does not sufficiently plead claims for retaliation or deprivation of property without due process.

plausible on their face.  The remaining claims against all Defendants lumped together do not

provide Lee with "fair notice" of the allegations to satisfy Plaintiff's pleading requirements and,

therefore, will be dismissed as to Lee.  Williams, 851 F.3d at 1025; Culinary Studios, 517 F. Supp.

3d at 1074-75.

2.  Ahlin and Price

The original complaint alleged that directors Price and Ahlin were "aware of" and

"encouraged and supported" the other Defendants' wrongful actions against Plaintiff, and were

"complicit in decisions" to deprive him of his personal property and to punish him for refusing to

participate in SVP treatment programs.  The Court found these allegations general and vague and

not sufficiently descriptive of the "personal involvement" of Price and Ahlin in the alleged

constitutional deprivations.  The Court also stated that the original complaint failed to sufficiently

allege facts demonstrating a "causal link" between Price and Ahlin's conduct and the alleged

deprivations.

To account for these deficiencies, the FAC alleges that Price and Ahlin were tasked in part

with "the formation and implementation of policy" at CSH, Doc. No. 14 at 11, ¶ 26, and "designed

and administered" the SVP program, which allegedly required detainees to "make adverse

admissions which might be used by prosecuting authorities to the detainee's prejudice."  Id. at 6, ¶

16.  The FAC also alleges that Price and Ahlin were "aware of," "acquiesced" to, and "approved

and ratified" a practice of retaliation and retribution against detainees who complained about the

conditions of confinement and refused to participate in programs including but not limited to the

SVP programs.  Id. at 6-7, ¶ 16 and 11, ¶ 26.  According to the FAC, this retaliation and

retribution was used to "coerce detainees such as Plaintiff to be docile, cooperate with prison

authorities[,] not make any objection and be compliant with the conditions of detention in

Coalinga State Hospital."  Id. at 7, ¶ 16 and 9, ¶ 20.  Furthermore, the FAC alleges that during and

after Plaintiff's release from CSH, Price and Ahlin "specially refused" to return all of Plaintiff's

musical equipment which had been "periodically confiscated" from him throughout his years in

detention.  Id. at 13, ¶ 30 and 9, ¶ 18.

Upon review, the Court finds that compared to the original complaint, the FAC specifies

14

actionable conduct of Price but not Ahlin.  A constitutional violation by a supervisor may be found under § 1983 where "there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Keates v. Koile, 883 F.3d 1228, 1242-43 (9th Cir. 2018).  "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Rodriguez v. Cty. of L.A., 891 F.3d 776, 798 (9th Cir. 2018).  Here, the FAC specifically alleges that Price "specially refused" to return Plaintiff's personal property on the day Plaintiff was discharged from CSH on August 12, 2019.  Doc. No. 14 at 13.  Further, the FAC alleges that the policy Price "form[ed] and implement[ed]" was deficient in that despite Plaintiff's release, it allowed CSH employees to continue to deprive Plaintiff of his personal property based on "arbitrary whims and for the sole purpose of harassment." Id.  The FAC states that Price knew or reasonably should have known of these acts because Price, as CSH executive director and chief of the administrative staff, was responsible for approving and ratifying practices performed pursuant to CSH policy. These allegations plausibly suggest that Price, through his "formation and implementation of policy," set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, that he "knew or reasonably should have known would cause others to inflict constitutional injury," Rodriguez, 891 F.3d at 798, although the constitutional injuries are not identified.[4]

With respect to Ahlin, however, the FAC does not plausibly allege that Ahlin was involved in any unconstitutional deprivation of Plaintiff's rights.  Ahlin had already stepped down as CSH Executive Director in 2013 and, therefore, was not in a position to "specially refuse[]" to return Plaintiff's musical equipment to him on August 12, 2019.  The FAC does not describe any other time or instance when Ahlin explicitly engaged in unconstitutional actions, other than those the FAC generally ascribes to all "Defendants and each of them."  Thus, the FAC does not provide

---

[4] While the FAC's claims are specific as to Price, the FAC as discussed above does not sufficiently allege the elements for these claims.

1   Ahlin with "fair notice" of the allegations against her.  Williams, 851 F.3d at 1025; Culinary

2   Studios, 517 F. Supp. 3d at 1074-75.  Because the FAC does not pleads facts from which the

3   Court can reasonably infer that Ahlin is liable for the alleged misconduct, the Court will dismiss

4   the FAC's claims against Ahlin on pleading deficiency grounds.  Hernandez, 897 F.3d at 1132;

5   Irving Firemen's Relief & Ret. Fund, 998 F.3d at 403.

6        **C.  Statute of Limitations**

7        *Defendants' Arguments*

8        According to Defendants, the relevant statute of limitations for personal injury claims is

9   two years. Thus, given that Plaintiff was released from DSH on August 12, 2019 and filed his

10  Complaint on August 11, 2021, the FAC's timeframe is limited to Plaintiff's alleged injuries that

11  took place on and after August 11, 2019.  Defendants argue that the FAC fails to allege any

12  injuries falling within this timeframe because the FAC fails to provide sufficient factual evidence

13  of any personal participation or actionable conduct by Defendants and fails to establish a causal

14  link between an alleged constitutional violation and Defendants' actions.  Furthermore,

15  Defendants contend that the "continuing violations doctrine" does not apply because the FAC fails

16  to allege sufficient facts that any injury occurred on a "continuing basis."

17       *Plaintiff's Arguments*

18       Plaintiff argues that his claims are not time-barred under the relevant two-year statute of

19  limitations because the "continuing violations doctrine" applies.  According to Plaintiff,

20  Defendants engaged in a continuing pattern and practice of unconstitutional acts against Plaintiff

21  lasting from at least 2011 to the present.  For example, Plaintiff argues that Defendants harassed

22  and deprived him of his personal property including his musical equipment which he allegedly

23  used for therapeutic purposes.  Plaintiff asserts that these repetitive actions occurred over the

24  course of at least nine years.

25       *Legal Standards*

26       For 42 U.S.C. § 1983 actions, the forum state's law governs the length of the statute of

27  limitations period.  Jackson v. Barnes, 749 F.3d 755, 761 (9th Cir. 2014) (citing Jones v. Blanas,

28  393 F.3d 918, 927 (9th Cir. 2004)).  Section 1983 claims are characterized as "personal injury"

suits for statute of limitations purposes.  Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015) (citing Wilson v. Garcia, 471 U.S. 261, 280 (1985)); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009).  In California, the statute of limitations period for personal injury actions is "[w]ithin two years." Cal. Civ. Proc. Code § 335.1; Klein v. City of Beverly Hills, 865 F.3d 1276, 1278 (9th Cir. 2017).

Federal law determines when a cause of action accrues and when the statute of limitations begins to run for a § 1983 claim. Belanus, 796 F.3d at 1025 (citing Wallace v. Kato, 549 U.S. 384, 388 (2007)). Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. Id. (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)). An "injury" for purposes of accrual refers to an actual injury, not a legal wrong. Lukovsky v. City & Cnty. of San Francisco, 535 F.3d 1044, 1051 (9th Cir. 2008); see also Scheer v. Kelly, 817 F.3d 1183, 1189 (9th Cir. 2016).  A plaintiff must be diligent in discovering the critical facts of his case.  Gregg v. Department of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017); Klein v. City of Beverly Hills, 865 F.3d 1276, 1278 (9th Cir. 2017). Accrual occurs even if the full extent of the injury is unknown.  Gregg, 870 F.3d at 887 (citing Wallace, 549 U.S. at 391).

The "continuing violations doctrine" functions as an exception to the discovery rule of accrual "allowing a plaintiff to seek relief for events outside of the limitations period."  Bird v. State, 935 F.3d 738, 746 (9th Cir. 2019) (citing Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001)).  "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  Id. (internal citations omitted).  The Ninth Circuit has recognized two applications of the continuing violations doctrine: first, to "a series of related acts, one or more of which falls within the limitations period," and second, to "the maintenance of a discriminatory system both before and during the limitations period."  Id. (citing Gutowsky v. County of Placer, 108 F.3d 256, 259 (9th Cir. 1997)).  Under the first application, also known as the "serial acts branch," discrete acts are not actionable if time barred—even when they are related to acts alleged in timely filed charges—because each discrete act starts a new clock for filing charges alleging that act.  Id. at 747 (citing AMTRAK v. Morgan, 536 U.S. 101, 113 (2002)).  The limitations period begins when the "discrete act" adverse to the

plaintiff occurs, not when the effects of that act are felt.  Viet Mike Ngo v. Woodford, 539 F.3d

1108, 1109-10 (9th Cir. 2008); see also Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001)

("[M]ere continuing impact from past violations is not actionable.").  Under the second application

of the continuing violations doctrine, also known as the "systematic branch," the plaintiff is not

required to allege specific acts that occurred within the statute of limitations period, but the Ninth

Circuit has refused to apply this branch to rescue individualized claims that are otherwise time-

barred.  Id. at 747-48.

*Discussion*

The parties agree that the scope of the FAC includes any of Plaintiff's alleged injuries

caused by Defendants that occurred within two years of the filing of Plaintiff's original complaint

on August 11, 2021.  Therefore, the statute of limitations does not bar Plaintiff from asserting

claims for said injuries that occurred during his final two days at CSH on August 11, 2019 and

August 12, 2019.  However, the parties disagree as to whether the FAC sufficiently alleges an

injury that took place on or after one of these two dates and whether the "continuing violations

doctrine" applies to any injuries that occurred prior to these dates.

As an initial matter, the Court finds that the FAC and judicially noticed documents indicate

that Plaintiff suffered an injury on August 12, 2019.  The FAC states "at the time of release of

Plaintiff on August 12, 2019, [Price] . . . refused to give him the musical equipment that he had

accumulated during the course of his detention as well as other personalty [sic]."  Doc. No. 14 at

9, ¶ 18; see also id. at 13, ¶ 30 (stating that after Plaintiff's release from CSH, Price refused to

return Plaintiff's personal property including his musical equipment).  According to Government

Claim #20001587, from 2006 through August 2019 Plaintiff "acquired 8 bins of legal property"

consisting of the following:

> [A]pproximately $15,000.00 (Fifteen Thousand Dollars) worth of professional music equipment" and "personal property consisting of: 1 Samsung 24" TV, 1 Professional 12" TV Monitor; 3 top grade Desk top DVD Players; 3 Portable DVD Players, 3 pairs of professional Headphones, approximately 672 Factory DVD Movies and documentaries, 2 portable CD Players, 2 Digital MP3 Players, approximately 160 Factory music and Christian CD's, numerous media patch cables and accessories, approximately 100 pieces of various jewelry, numerous Photographs, 3 pairs of new shoes, and other various items of personal property.

Doc. No. 18 at 107.

Plaintiff alleges that on the day of his release on August 12, 2019, CSH staff "only released approximately one third of my said property" consisting of "[a] few legal files, a few of my musical instruments, some miscellaneous patch cables and cords, several boxes of sheet music, a portion of my jewelry, two desk lamps, about one hundred magazines, some posters, art work, and other personal papers." Id. at 109. Government Claim #20001587 only names Price among Defendants as the respondent to this claim, Id. at 107, and the FAC states that Price "specially refused" to return Plaintiff's personal property after his release. The FAC does not distinguish the conduct of each Defendant regarding this "confiscation" of Plaintiff's property. See Doc. No. 14 at 7-9, ¶¶ 17, 18. In light of these allegations, Plaintiff's claim that Price unlawfully confiscated and/or destroyed Plaintiff's property on August 12, 2019 would not be time-barred if sufficiently pleaded.[5]

With respect to Plaintiff's other alleged injuries, the FAC is less specific as to timing. The FAC states that at the time of Plaintiff's release on August 12, 2019, Defendants "continued" a practice of "retaliation and retribution for Plaintiff's refusing to be a compliant prisoner." Doc. No. 14 at 9, ¶ 18. The alleged "retaliation and retribution" consisted of confiscation and destruction of Plaintiff's musical equipment and legal rights, housing in units detrimental to his health and safety, involuntary subjection to psychotropic medication, and denial of food, water, and medical treatment for serious medical needs. Id. at 7-8, ¶ 17. This "retaliation and retribution" was allegedly inflicted on Plaintiff on a continual basis for "rais[ing] complaints about the conditions of confinement" and for "refus[ing] to submit to a SVP program." Id. at 6-7, ¶¶ 16, 17. Price allegedly "designed and administered" the SVP program and was aware of, approved, and ratified the practice of retaliation and retribution to "coerce detainees such as Plaintiff to be docile, cooperate with prison authorities[,] not make any objection and be compliant with the conditions of detention in Coalinga State Hospital." Id. at 6-7, ¶ 16 and 9, ¶ 20. The FAC alleges

---

[5] The FAC does not plausibly allege that Ahlin, Mendez, Adams, and Lee were involved in the refusal to return Plaintiff's property on August 12, 2019, and in any event, the Court dismissed the FAC's claims against Ahlin, Mendez, Adams, and Lee on pleading deficiency grounds as discussed above.

1   this was "a continual violation occasioned by continual unlawful acts which are the result of this

2   custom and practice." Id. at 11-12, ¶ 26.

3          To the extent any instance of "retaliation and retribution" occurred on or after August 11,

4   2019, the FAC's claims arising from those acts fall within the two-year statute of limitations

5   period.  Whether all other preceding acts of "retaliation and retribution" are time-barred depends

6   on whether they are covered by the "continuing violations doctrine."[6]

7          The Court first notes that the FAC asserts individualized claims pertaining to Plaintiff, not

8   claims pertaining to a broader class.  Therefore, the "systemic branch" of the "continuing

9   violations doctrine" does not apply.  Bird, 935 F.3d at 748 ("[W]e have consistently refused to

10  apply the systematic branch to rescue individualized claims that are otherwise time-barred.").

11  With respect to the doctrine's "serial acts branch," the Court finds that Plaintiff has not met his

12  burden to prove that Price's refusal to return Plaintiff's property on August 12, 2019 was an "act

13  evidencing [a] continuing practice" dating back to events preceding the limitations period. Id. at

14  746.  As discussed above, the FAC does not explicitly describe any other time or instance when

15  any Defendant confiscated or destroyed Plaintiff's property.  Neither does the FAC describe how

16  the alleged multiple acts of confiscation were sufficiently related to one another.  See Pouncil v.

17  Tilton, 704 F.3d 568, 581 (9th Cir. 2012) (holding that a challenged act was discrete because the

18  plaintiff's claim "d[id] not rely on any acts that occurred before the statute of limitations period to

19  establish a violation").  While Plaintiff appears to argue that an unconstitutional CSH policy

20  combined with the threat of future enforcement of that policy renders all his claims timely, Doc.

21  No. 22 at 7, the FAC does not sufficiently allege facts describing a continuing CSH policy that

22  was enforced throughout his time at CSH or how that policy threatened to be or is still being

23  enforced today.  Plaintiff's Government Claims further indicate that the various confiscations of

24  Plaintiff's property were not continuously linked because they resulted from different policies

25  enforced by different individuals for different reasons.  See Doc. No. 18 at 45-50 (Government

26  Claim #602571 alleging that Adams, Mendez, and Ahlin confiscated contraband on and around

27

28  ------------------------
    [6] Other than the "continuing violations doctrine," Plaintiff does not assert any other theory regarding accrual (or tolling) in response to Defendants' statute-of-limitations defense.

October 31, 2011); Id. at 65 (Government Claim #17010147 alleging on and around October 5, 2017 that Price and Ahlin unlawfully enforced a new rule that prohibited Plaintiff from enrolling in an "Open Music Studio" program unless he first enrolled in an active "Treatment Class"); Id. at 76-78 (Government Claim #18007593 alleging that Price and Ahlin refused to return all of Plaintiff's property from storage on and around July 2, 2018 after he was placed in a new CSH unit upon his return from Sacramento County Jail for a court appearance); Id. at 107-09 (Government Claim #20001587 alleging that after Plaintiff was released from detention on August 12, 2019, Price refused to give Plaintiff all the property he had accumulated on the ground that CSH could not release contraband "without a court order."). Thus, Plaintiff's argument that all the alleged confiscations were continuously linked to Price's act on August 12, 2019 is unpersuasive and unavailing. Bird, 935 F.3d at 746; Pouncil, 704 F.3d at 581; see also Navarro v. Herndon, 2011 U.S. Dist. LEXIS 94606, *24 (E.D. Cal. Aug. 23, 2011); Aranda v. Cty. of L.A., 2019 U.S. Dist. LEXIS 212006, *7-8 (C.D. Cal. Aug. 1, 2019); Knapp v. Hickman, 2008 U.S. Dist. LEXIS 12899, *23 (E.D. Cal. Feb. 20, 2008).

Furthermore, the record before the Court shows that the other alleged acts of "retaliation and retribution" do not constitute a "continuing violation." The FAC does not allege non-conclusory facts describing how Plaintiff's involuntary subjection to psychotropic medication and denial of food, water, and medical treatment "continued" throughout his detention until his release on August 12, 2019. These allegations also do not expressly appear in any of Plaintiff's Government Claims. Additionally, the FAC does not allege any non-conclusory facts as to how Plaintiff was housed in units detrimental to his health and safety on a continuing basis until he was released. Although Plaintiffs Government Claims suggest that Plaintiff was placed in a different unit on or around July 2, 2018, the FAC does not allege any non-conclusory facts as to whether or how that placement posed a continuing risk to his health and safety until he was released on August 12, 2019. Accordingly, while claims for actionable conduct that took place on or after August 11, 2019 are not time-barred, Plaintiff has not demonstrated that any of this conduct was part of a "continuing practice" dating back to events preceding the limitations period. Bird, 935 F.3d at 746; Pouncil, 704 F.3d at 581.

### D.  Qualified Immunity

*Defendants' Arguments*

Defendants argue that they are entitled to qualified immunity because Plaintiff failed to identify any law clearly establishing that their conduct was unconstitutional.  Specifically, Defendants claim that the FAC does not allege what specific conduct Defendants actually did and that the FAC's allegations of generalized, non-specific actions do not establish that the individual Defendants were personally involved.  Furthermore, Defendants argue they are also immune because the FAC merely alleges conclusory and generalized statements related to policymaking.

*Plaintiff's Arguments*

Plaintiff argues that qualified immunity does not protect Defendants because existing case law clearly established that Defendants cannot fail to provide a detainee with medical care for a serious medical need.  According to Plaintiff, several precedent cases stand for the proposition that there is a constitutional right under the 14th Amendment for pre-trial detainees to be provided medical care for a serious medical need.  Additionally, Plaintiff contends that Defendants are not immune from suit because they violated his constitutional right as a pre-trial detainee to be free of conditions of incarceration that are punitive and constitute cruel and unusual punishment.  Plaintiff asserts that this right was clearly established.

*Legal Standards*

Qualified immunity protects public officials from a court action unless their conduct violated a constitutional right that was "clearly established" at the time.  Felarca v. Birgeneau, 891 F.3d 809, 815 (9th Cir. 2018) (citing City & Cty. of S.F. v. Sheehan, 575 U.S. 600, 611 (2015)).  To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful."  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The plaintiff must prove both steps of the inquiry to establish the officials are not entitled to qualified immunity.  Id.  The court may address these steps in any order.  Id. at 815-16.

"To be clearly established, a legal principle must have a sufficiently clear foundation in

22

1  then-existing precedent," as shown in "controlling authority or a robust consensus of cases of

2  persuasive authority." Tuuamalemalo v. Greene, 946 F.3d 471, 477 (9th Cir. 2019) (citing District

3  of Columbia v. Wesby, 138 S. Ct. 577, 590-91 (2018)).  "It is not enough that the rule is suggested

4  by then-existing precedent.  The precedent must be clear enough that every reasonable official

5  would interpret it to establish the particular rule the plaintiff seeks to apply." Wesby, 138 S. Ct. at

6  590.  The court must define the right at issue with "specificity" and "not . . . at a high level of

7  generality." Gordon v. Cty. of Orange, 6 F.4th 961, 968 (9th Cir. 2021) (citing City of Escondido

8  v. Emmons, 139 S. Ct. 500, 503 (2019)).  However, an "obviously unlawful" case can "clearly

9  establish" that a constitutional violation occurred "even in novel factual circumstances." Hines v.

10  Youseff, 914 F.3d 1218, 1230 (9th Cir. 2019).  It is the Plaintiff's burden to establish that the law

11  was "clearly established." Felarca, 891 F.3d at 815.

12       *Discussion*

13       Given the Court's earlier findings that dismissed the FAC's claims, the Court need not

14  reach Plaintiff's argument that qualified immunity does not apply.  Nevertheless, the Court notes

15  that based on the parties' briefings, the claims against Defendants should also be dismissed

16  because Plaintiff has failed to satisfy the first step of the qualified immunity analysis.  In other

17  words, Plaintiff has not demonstrated that Defendants' conduct violated a constitutional right.

18  Furthermore, while the Court need not address step two of the qualified immunity analysis, the

19  Court notes that it was Plaintiff's burden to show that any constitutional violation within the

20  applicable statute of limitations period was "clearly established" or "obvious," but Plaintiff did not

21  identify cases or explain "obviousness."

22       **E.  Leave to Amend**

23       In general, a court should liberally allow a party leave to amend its pleading.  See Fed. R.

24  Civ. P. 15(a).  However, the Court may deny leave to amend where amendment would be futile.

25  Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009).  Additionally, the Court's discretion to

26  deny leave to amend is particularly broad where the plaintiff has previously been permitted

27  to amend the complaint.  Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (citing

28  Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996)).

Here, the Court previously allowed Plaintiff leave to amend the original Complaint with guidance on what the FAC should include.  While the FAC contains several of the same deficiencies the Court noted in its prior order, in an abundance of caution and in light of the liberal standard of Fed. R. Civ. P. 15(a), the Court will again grant Plaintiff leave to amend his complaint to address the deficiencies discussed above.  The Court notes that its discretion to deny leave to amend any future complaint will be "particularly broad" given that Plaintiff has now been permitted multiple opportunities to amend the complaint.  <u>Salameh</u>, 726 F.3d at 1133.

## <u>ORDER</u>

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss the FAC (Doc. No. 16) is granted with leave to amend;

2. Plaintiff may file a second amended complaint that is consistent with this order no later than twenty-one (21) days from service of this order;

3. If Plaintiff files a second amended complaint, Defendants shall file a response within twenty-one (21) days of service of the second amended complaint; and

4. The failure of Plaintiff to file a timely second amended complaint will result in the withdrawal of leave to amend and closure of this case without further notice.

IT IS SO ORDERED.

Dated:   January 11, 2023   　　　　　　　　　　　　　　　　　　

　　　　　　　　　　SENIOR  DISTRICT  JUDGE